**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>iM3NY LLC, *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 25-10131 (BLS)<br>(Jointly Administered)<br><br>Re: D.I. 48<br><br>**Obj. Deadline: Feb. 19, 2025 at 4:00 p.m.**[2]<br>**Hearing Date: Feb. 24, 2025 at 10:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION
FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO
IMPLEMENT KEY EMPLOYEE INCENTIVE PLAN**

Andrew R. Vara, United States Trustee for Region 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, hereby files this objection ("Objection") to the *Debtors' Motion for Entry of an Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [D.I. 48] (the "Motion"). In support of the Objection, the U.S. Trustee states:

**PRELIMINARY STATEMENT**

1. The Debtors have not satisfied their burden under 11 U.S.C. § 503(c) to demonstrate, *inter alia*, that (i) payment under the key employee incentive plan ("KEIP") is not a retention payment and (ii) the KEIP is justified by the facts and circumstances of these cases. Although the Motion states that the KEIP payment is designed to incentivize a sale transaction of the business or the HSBC debt, the proposed payment appears to be a retention payment designed to keep Chief Executive Officer Lukasz Cianciara employed through completion of a sale.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) iM3NY LLC (N/A); and (ii) Imperium3 New York, Inc. (4574). The address of the Debtors' corporate headquarters is 1093 Clark Street, Endicott, New York 13760.

[2] The objection deadline was extended by agreement of the parties.

## JURISDICTION AND STANDING

2. This Court has jurisdiction to hear the Motion and this Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding the Motion. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

5. On January 27, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6. On February 12, 2025, the U.S. Trustee appointed the Official Committee of Unsecured Creditors [D.I. 59].

7. The Debtors are debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. On February 3, 2025, the Debtors filed a motion to employ investment banker Hilco Corporate Finance ("Hilco") to continue marketing and solicit proposals for the sale of the Debtors' business or substantially all their assets [D.I. 45].

9. That same day, the Debtors filed a motion for approval of bidding procedures for the sale of substantially all of their assets ("Bid Procedures Motion") [D.I. 46]. Although no Stalking Horse has been proposed to date, the Bid Procedures Motion allows the Debtors to select a proposed Stalking Horse with bid protections after providing notice, before bids are due on March 14, 2025.

**The Motion**

10. On February 3, 2025, the Debtors filed the Motion [D.I. 48] seeking an order approving a KEIP for Chief Executive Officer Lukasz Cianciara in the amount of 3% of the purchase price for the Debtors' business or all of its assets or, alternatively, the purchase of the debt of HSBC Bank, the secured creditor and DIP lender, provided that the business continues to operate as a going concern. Mot. ¶ 16.

11. Prior to bankruptcy, Mr. Cianciara was responsible as Chief Executive Officer "for determining and executing the strategic goals of the Debtors under the direction and oversight of the Debtors' board of directors, including two independent board members" and "oversee[ing] all strategic partner and key customer relationships, all functional areas of development, and all regulatory, finance, legal, commercial, and human resources segments." Mot. ¶ 14. Under the KEIP, Mr. Cianciara has the additional role of "liaising with all potential purchasers of the Assets and marketing the existing and future commercial opportunities for the Assets." Mot. ¶ 14.

**ARGUMENT**

11. Transfers to insiders must be reviewed under 11 U.S.C. § 503(c). If a transfer to an insider is for the purpose of inducing the insider to stay with the Debtors, the transfers

are allowable only under Section 503(c)(1), even if the transfers are otherwise in the ordinary course of the Debtors' business. *See In re Nellson Nutraceutical*, 369 B.R.787, 800-801 (Bankr. D. Del. 2007).

**The KEIP Does Not Satisfy Section 503(c)(1).**

12. Under section 503(c)(1) of the Bankruptcy Code, the Debtors must, "based on evidence in the record," demonstrate all three of the required elements set forth in section 503(c)(1). Section 503(c)(1) provides, in pertinent part, as follows:

> (c) Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that—
>   (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>   (B) the services provided by the person are essential to the survival of the business; and
>   (C) either—
>     (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>     (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred[.]

11 U.S.C. § 503(c) (bracketed text substituted).

13. For a debtor to avoid running afoul of section 503(c)(1)'s restriction on retention pay, the debtor must demonstrate that its bonus plan is tied to significant hurdles which are difficult to achieve. *See In re Dana Corp.*, 358 B.R. 567, 582 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly not 'lay-ups'"). As set forth by the Court in *Residential Capital*, "triggering bonus awards solely on the basis of a sale transaction, confirming a reorganization plan or exiting bankruptcy are not sufficient to shift consideration of a plan providing for payment to insiders from § 503(c)(1) to § 503(c)(3)." 478 B.R. 154, 172 (Bankr. S.D.N.Y. 2012).

14. The Debtors, as the proponent of a bonus plan, have the burden of providing evidentiary support to establish that its bonus program is not a disguised retention plan governed by § 503(c)(1). *In re Hawker Beechcraft*, 479 B.R. 308, 314 (Bankr. S.D.N.Y. 2012) (stating that "[t]he proponent of the KEIP bears the burden of proving that the plan is not a retention plan governed by § 503(c)(1)."); *see also In re Residential Cap., LLC*, 478 B.R. at 170 ("In order to show that the more permissive section 503(c)(3) applies, the Debtors must establish by a preponderance of the evidence that the KEIP is primarily incentivizing and not primarily retentive. If the Debtors fail to meet their burden of proof, the KEIP cannot be approved."). Where section 503(c)(1) applies, the transfer cannot be justified solely on the debtor's business judgment. *See In re Borders Grp., Inc.*, 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011).

15. To show that a bonus plan is not governed by section 503(c)(1), the Debtors must prove by a preponderance of the evidence that the bonuses are a part of a "pay for value"

plan that offers incentives based on performance rather than a "pay to stay" plan. *In re Global Home Prods., LLC,* 369 B.R. 778, 783; *accord Residential Cap., LLC*, 478 B.R. at 170. In addition, although any payment to an employee, including regular wages, has at least a partial purpose of retaining the employee, for bonus plans to fall outside the purview of section 503(c)(1), they must be primarily incentivizing. *In re Nellson Nutraceutical*, 369 B.R. 787, 802 (Bankr. D. Del. 2007). If a debtor fails to meet their burden of proof, then the bonus plan cannot be approved.

17. The Debtors have failed to demonstrate that the proposed KEIP complies with the limitations imposed by Congress on insider compensation under Section 503(c) of the Bankruptcy Code. Although the Debtors assert that Section 503(c)(1) is inapplicable to the KEIP as a performance-based incentive plan, the Motion fails to contain information sufficient to demonstrate that the targets are "difficult targets to reach." *Dana Corp.*, 358 B.R. at 583.

18. To meet his proposed performance objectives, Mr. Cianciara needs the business to sell as a going concern or HSBC needs to sell its debt. As the Chief Executive Officer, part of Mr. Cianciara's normal duties would include participating in the sale process. The Motion does not provide any information as to how the performance objectives will cause a higher sale price or make it more likely that another lender will purchase HSBC's debt. It is unclear what sales price would be expected if Mr. Cianciara simply conducted his duties without any additional effort. Additionally, there is no information about how Mr. Cianciara's efforts affect whether HSBC sells its debt. If the targets are not difficult to reach, approval of the KEIP must be denied because it does not comply with section 503(c)(1) of the Bankruptcy Code.

**The KEIP Does Not Satisfy Section 503(c)(3).**

16. If the Court finds that the Debtors establish that the KEIP does not fall within the parameters of section 501(c)(1), then the Debtors must prove that bonuses are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). The Debtors have the burden of proof to satisfy this standard and must establish a record to support approval of the KEIP under section 503(c)(3).

17. Section 503(c)(3) limits payments made to the Debtors' employees outside of the ordinary course unless such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). In *In re Dana Corp., (Dana II)*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006), Judge Lifland listed several factors that courts consider when determining if the structure of a compensation proposal and the process for its development meet the business judgment test including whether (i) a reasonable relationship exists between the proposed plan and the desired results; (ii) the cost of the plan is reasonable; (iii) the scope of the plan is fair and reasonable; (iv) the plan is consistent with industry standards; (v) the debtor has exercised sufficient due diligence in formulating the plan; and (vi) independent counsel has performed due diligence in formulating the plan. 358 B.R. at 576–77. *See Global Home Prods.*, 369 B.R. at 786 (evaluating an incentive plan under the business judgment standard of section 363 by applying the factors listed above); *Borders*, 453 B.R. at 474 (same); *but see In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (standard for approval under section 503(c)(3) is higher than the business judgment test; if payments to employees outside the ordinary course were only subject to the business judgment test, then the language of section 503(c)(3) would ostensibly be rendered meaningless).

18.  First, as a threshold matter, the Debtors fail to explain how the estates benefit from HSBC's debt being sold or why estate funds should be expended to incentivize and/or produce that result.  There is no evidence in the record regarding the benefit which the estates receive from the mere substitution of one secured lender for another; such substitution could have a negative impact on the direction of these cases.

19.  Second, it is not clear how the performance objectives will assist in receiving a higher sale price when the Chief Executive Officer will receive 3% of any sale of the business or of HSBC's debt, provided that the company remains a going concern. For instance, if HSBC's debt was to sell for $10 million, Mr. Cianciara will receive a $300,000 payment and if the business as a going-concern sells for $11 million, he will receive $330,000. Whether Mr. Cianciara will rationally spend the additional time and energy to generate the additional $1 million in sale proceeds depends on the amount of time and effort it will take, given the $30,000 payment difference. If it takes little to no additional work to close the $10 million sale and substantial work to close the $11 million sale, Mr. Cianciara may not be as incentivized to do the extra work than if the KEIP only applied above a minimum sale floor that could realistically be achieved without extraordinary effort.  There is no evidence that the KEIP, as proposed, is truly incentivizing.

20.  Accordingly, the Debtor has failed to establish that the KEIP is justified under the facts and circumstances of this case pursuant to 11 U.S.C. § 503(c)(3).

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

        Respectfully submitted,

        **ANDREW R. VARA**
        **UNITED STATES TRUSTEE**
        **FOR REGIONS 3 & 9**

        **By:** */s/ Jane M. Leamy*
            Jane M. Leamy (#4113)
            Megan Seliber
            Trial Attorneys
            J. Caleb Boggs Federal Building
            844 King Street, Suite 2207, Lockbox 35
            Wilmington, DE 19801
            (302) 573-6491

Dated: February 18, 2025            (302) 573-6497 (Fax)

**CERTIFICATE OF SERVICE**

       I, Megan Seliber, hereby attest that on 2/18/2025, I caused to be served a copy of this *United States Trustee's Objection to Debtors' Motion for Entry of an Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* by electronic service on the registered parties via the Court's CM/ECF system and upon the following parties in the manner indicated:

| | |
|---|---|
| **Chipman Brown Cicero & Cole, LLP**<br>William E. Chipman, Jr.<br>Mark D. Olivere<br>1313 North Market Street<br>Suite 5400<br>Wilmington, DE 19801<br>Email: chipman@chipmanbrown.com<br>        olivere@chipmanbrown.com<br>*Via Email* | **Seward & Kissel LLP**<br>Robert J. Gayda<br>Catherine V. LoTempio,<br>Andrew J. Matott, Esq.<br>One Battery Park Plaza<br>New York, New York 10004<br>Email: gayda@sewkis.com<br>        lotempio@sewkis.com<br>        matott@sewkis.com<br>*Via Email* |
| **Potter Anderson & Corroon LLP**<br>Christopher M. Samis<br>R. Stephen McNeill<br>James R. Risener III<br>Ethan H. Sulik<br>1313 N. Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Email: csamis@potteranderson.com<br>        rmcneill@potteranderson.com<br>        jrisener@potteranderson.com<br>        esulik@potteranderson.com<br>*Via Email* | |

                    */s/ Megan Seliber*
                    Megan Seliber